Receipt # 062921

ORIGINAL

ECF

FILED
MAY 1 9 2005
U.S. COURT OF
FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

COLLINS NATIONAL, a limited partnership, and COLLLINS DEVELOPMENT CO., a California corporation as General Partner,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 05- 563C

**COMPLAINT**

COLLINS NATIONAL, a limited partnership, and COLLINS DEVELOPMENT CO., a California corporation as General Partner of Collins National, hereby files this Complaint against the United States of America, and states as follows:

**I. Parties**

1. Plaintiff Collins National ("Collins") is a limited partnership formed under the laws of the State of California. Collins owns and operates a certain building located at 402 West 35th Street, National City, California (the "Premises"). Collins Development Co. ("Collins Development") is the General Partner of Collins.

2. The United States of America is a defendant in this action, and acted herein through the conduct of its agency, the General Services Administration (the "GSA"). The GSA entered into two leases with Collins for the construction and operation of the Premises and for the specific use of the Premises by the Drug Enforcement Agency (the "DEA"), another agency of the United States Government.

## II. JURISDICTION

3. Jurisdiction is proper in this Court pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §609(a)(1) which provides for review in this Court of any final decision of a Contracting Officer of, among other agencies, the General Services Administration.

## III. STATEMENT OF FACTS COMMON TO ALL CLAIMS

4. This is an action seeking *de novo* review of a certified Claim (the "Claim" filed on behalf of COLLINS with the GSA Contracting Officer on November 4, 2003, and rejected in part by the Contracting Officer on or about November 10, 2004). The entire certified Claim is attached hereto as Appendix A to this Complaint and various Exhibits to the Claim (also attached) are referenced herein as appropriate. (The Appendices are in two volumes due to their length and are sequentially "Bates" numbered for ease in referencing, and are referred to herein as "A __". In the hard copies of the Appendices the Exhibits are also separated by color separations.)

The facts upon which the Complaint is based are as follows:

5. COLLINS and GSA entered into Lease No. GS-09B-86764 on or about November 25, 1986 (the "Lease"). A copy of the Lease is attached to the Claim as Exhibit 1. (A000016 – A000043.)

6. The purpose of the Lease was to extend the then existing occupancy of the Premises by the DEA.

7. COLLINS had originally built the Premises in 1974 to suit the needs of and for occupancy by the DEA and the DEA took occupancy of the Premises pursuant to the written original lease agreement, Lease No. GS-09B-74817 dated June 13, 1975 (the "Original Lease"). A copy of the Original Lease is attached to the Claim as Exhibit 2. (A00044-A000112.)

8. DEA continually occupied the Premises from 1975 through and including April 30, 2003, when the Lease term expired.

9. DEA remained in the Premises from and after April 30, 2003 when the Lease term expired, until the keys were turned over to COLLINS on or about May 30, 2003. At that time, COLLINS accepted the keys from the DEA tenants but specifically reserved its rights against GSA and DEA with respect to holdover rent and costs incurred in decommissioning the building. The reservation of rights letter is attached to the Claim as Exhibit 3. (A000113-A000114.)

10. In order to receive the award of the Original Lease, COLLINS was required to build the Premises to suit the occupancy and substantial special requirements of the DEA. As a condition to the Original Lease, COLLINS was required to install in the Premises the following:

a. Perimeter walls were to extend "slab to slab" and be soundproof, including double layer of sheetrock with the space between filled with residential type insulation (Schedule A to Original Lease, p. A000046.);

b. All outside ground floor windows were to be covered with heavy gauge wire screen or bars (Schedule A to Original Lease, p. A000046);

c. All doors were to be solid core (Schedule A to Original Lease, p. A000046);

d. The undercover telephone room required a dedicated telephone outlet (Schedule A to Original Lease, p.A000048);

e. The Laboratory required special separation elements between the lab and the administrative area (Schedule A to Original Lease, p. A000049);

f. Laboratory floors were to be covered with acid/base resistant tile (Schedule A to Original Lease, p. A000049);

g. three fume control stations were to be constructed with individual exhaust ventilation duct systems of special construction (Schedule A to Original Lease, p. A000050);

h. A vault was to be constructed of steel reinforced concrete block (Schedule A to Original Lease, p. A000051);

i. A volatile solvent room was constructed with a 2-hour fire rating, panic bar lockset door and epoxy lining up to 12" around the interior walls (Schedule A to Original Lease, p. A000051);

j. Exhaust fans were installed in the Solvent Room as well for light and "heavy vapors" (Schedule A to Original Lease, p. A000051);

k. The outside wall of the Solvent Room required a blowout panel for explosions (Schedule A to Original Lease, p. A000051);

l. A water deionization system was required for the lab work (Schedule A to Original Lease, p. A000052); and

m. Floors in all offices and corridor areas were required to be covered in vinyl asbestos (Schedule B to Original Lease, Part II, paragraph 4(a), p. A000058).

11. COLLINS also received further construction details from the DEA regarding the requirements of the facility, including:

a. Exhaust fans for the Solvent Storage Room were required to meet "requirements of NFPA for Class 1, Division 1, Groups C & D Hazardous Locations" (DEA General Specifications, 1-Solvent Storage Room, p. A000086);

b. Flooring in the Gas Storage Room was required to be "vinyl asbestos tile" (DEA General Specifications, 2-Gas Storage Room, p. A000086);

c. Flooring in the Main Lab 1 and 2 was required to be "vinyl asbestos tile" (DEA General Specifications, 3-Main Lab 1 and 2, p. A000087);

d. Flooring in the Special Purpose Labs was required to be "vinyl asbestos tile" (DEA General Specifications, 4-Special Purpose Lab etc., p. A000087);

e. Flooring in the Men's and Women's Locker Rooms was required to be "vinyl asbestos tile" (DEA General Specifications, 8-Men's and Women's Locker Rooms, p. A000088);

f. Flooring in the Employees Lounge was required to be "vinyl asbestos tile" (DEA General Specifications, 11-Employee's Lounge, p. A000088);

g. Flooring in the Vault was required to be "vinyl asbestos tile" (DEA General Specifications, 12-Vault, p. A000088);

h. Flooring in the Administrative Storage Room was required to be "vinyl asbestos tile" (DEA General Specifications, 12-Administrative Storage Room, p. A000089);

i. Flooring in the File Room was required to be "vinyl asbestos tile" (DEA General Specifications, 17-File Room, p. A000089);

j. Flooring in the Fingerprint Room was required to be "vinyl asbestos tile" (DEA General Specifications, 18-Fingerprint Room, p. A000089); and

k. Flooring in the Chemical Storage and Glassware Storage areas was required to be "vinyl asbestos tile" (DEA General Specifications, 21-Chemical Storage etc, p. A000090).

Collins duly installed or otherwise implemented the changes required by the GSA.

12. The inclusion of vinyl asbestos tile flooring in many of these areas was designed to make the building both fireproof and apparently more affordable. (See Letter of E. Tyler Miller, Jr. to Lawrence N. Hill, December 13, 1974, attached to the Claim as Exhibit 4 (A000115-A000116), reducing the annual rent by $4,300 by including vinyl asbestos tile and base).

13. During its occupancy of the Premises under the Original Lease, the DEA had occasion to require additional laboratory equipment to be installed pursuant to: Supplemental Lease Agreement No. 2, (attached to the Claim as Exhibit 5; A000117); Supplemental Lease Agreement No. 4, (attached to the Claim as Exhibit 6; A000118); and Supplemental Lease Agreement No. 6, (attached to the Claim as Exhibit 7; A000119); ventilation and exhaust fans in the Vault pursuant to Supplemental Lease Agreement No. 7, (attached to the Claim as Exhibit 8; A000120); additional electrical service pursuant to Supplemental Lease Agreement No. 8, (attached to the Claim as Exhibit 9; A000121); and a significant remodel of the Premises pursuant to Supplemental Lease Agreement No. 11, (attached to the Claim as Exhibit 10; A000122-A000125).

14. In addition to the above, the DEA often discussed and eventually required installation of a gas incinerator for high temperature destruction of contraband and illegal substances. COLLINS constructed the improvements required by Supplemental Lease Agreement No. 12 (attached to the Claim as Exhibit 11; A000126-A000127) but the DEA never received Air Pollution Control District approval to use the Incinerator and, other than for testing purposes, it was never used. Significant to the expectations of the parties in entering into their Lease agreement, however, the Supplemental Lease Agreement No. 12 regarding construction of the Incinerator provided:

> REPLACEMENT: At its sole discretion the Government may elect to replace any part and/or the complete incinerator required by this Addendum. However, any such replacement would be at the sole expense of the Government. Any replacement shall be and remain the property of the Government and may be removed or otherwise dispose [sic] of by the Government. *The Lessor hereby waives any restoration in conjunction with said removal.*

(Id. at A000126-27; emphasis added.)

15. Instead of renewing the Original Lease, in 1986 the GSA decided for reasons of policy and changes in the law that a new lease would be required. After negotiations and extensions of the Original Lease, the Lease was entered into effective November 1986 and the DEA occupancy continued unabated. (Appendix A, Exhibit 1 A000016-A000043.)

16. During the almost thirty (30) years of occupancy of the Premises by DEA, numerous controlled substances were examined and stored on the Premises. During said occupancy, controlled and otherwise hazardous substances became embedded throughout the Premises, including, but not limited to, the carpet, plumbing systems, pipes, drywall, and ceiling tiles; and controlled and otherwise hazardous substances also infiltrated the heating, ventilating and air-conditioning systems of the Premises.

17. COLLINS filed a Claim with the General Services Administration in accordance with the Contract Disputes Act of 1978, 41 U.S.C.A. §§601 et seq. for additional payments due COLLINS based on four classes of activity:

a. Category 1: Holdover Rent for Continued Occupancy – DEA continued to occupy the premises through and including May 30, 2003 until the keys were returned to Collins. SUB-TOTAL THIS CLAIM: $78,865;

b. Category 2: Holdover Rent for the Period of Decommissioning – COLLINS was unable to advertise for rent or actually rent the Premises because it was required to complete the decommissioning process by demolishing parts of the building and removing various controlled and hazardous substances in the Premises which resulted from the DEA's occupation of the Premises. Rent is calculated at $2,628.83 per day from and including May 31, 2003 through and including August 26, 2003. SUB-TOTAL THIS CLAIM: $228,708.21;

c. Category 3: Costs of Removing Asbestos from the Building – COLLINS was required to remove asbestos-containing vinyl tile and mastic originally required by the GSA to be included within the Building. This claim includes two parts: (a) COLLINS incurred costs in connection with environmental assessments and monitoring required during the

asbestos abatement stage; this work was performed by URS and for which COLLINS paid a total of $27,600 (Exhibit 19 to the Claim; A000180-A000181) plus asbestos abatement which work was required; this work was performed by Clauss Construction, for which COLLINS paid a total of $76,901.20 (Exhibit 21 to the Claim; A000184-A000185). SUB-TOTAL THIS CLAIM: $ 104,501.20; and

d. Category 4: Costs of Demolishing Those Portions of the Structure Contaminated with Controlled and Hazardous Substances—Collins was required to demolish and remove much of the structure due to the presence throughout the Premises of controlled and hazardous substances imbedded in the fixtures due to the DEA's use and occupancy of the building. This claim includes two parts: (a) COLLINS incurred costs in connection with environmental assessments and monitoring required during the demolition phase which work was performed by URS and for which COLLINS paid a total of $11,080 (Exhibit 20 to the Claim; A000182-A000183) plus required demolition work of the areas imbedded with controlled and hazardous substances which work was performed by Clauss Construction for which COLLINS paid a total of $121,513.80 (Exhibit 21 to the Claim; A000184-A000185). SUB-TOTAL THIS CLAIM: $132,593.80.

18. COLLINS' claim was filed with the GSA on November 4, 2003. (Appendix A, A000001-A000015.)

19. On April 1, 2004, five months after COLLINS filed its initial claim, the Contracting Officer for the GSA responded to COLLINS' claim by requesting additional information. (Appendix B; A000185A-A000185B.)

20. On April 26, 2004, COLLINS sent additional information to the GSA in support of COLLINS' claim. (Appendix C; A000186-A000541.) On April 28, 2004, COLLINS sent more information to GSA to fully comply with all information requests. (Appendix D; A000542-A000558.)

21. On November 10, 2004, more than a year after COLLINS filed its Claim, the Contracting Officer for the GSA issued his three page final decision concerning the claims of COLLINS. A copy of that ruling is attached as (Appendix E; A000559-A000562.) The Contracting Officer agreed that the DEA had "held over" for 1 month and that rent in the amount of $78,865.00 was due COLLINS plus interest. A check for $78,865.00 was mailed to COLLINS on or about December 27, 2004. In addition, interest in the amount of $2,504.20 was paid on January 13, 2005, although the actual amount due from May 30, 2003 for interest on rent was actually $4,426.03. (Correspondence related thereto is Appedix F; A000563-A000567.)

## IV. CLAIMS FOR RELIEF

### A. BREACH OF CONTRACT

22. COLLINS realleges and incorporates the allegations set forth in paragraphs 1 through 20 as if set forth herein.

23. Pursuant to the Lease Agreements between the parties, the Defendant was obligated to return the Premises to the COLLINS in such a condition as not to have committed waste to the Premises.

24. The Defendant returned the Premises to COLLINS in a wasted condition, contaminated throughout with asbestos containing material which was required to be installed by the initial Lease, and contaminated with various hazardous and controlled substances resulting from the DEA's use that were required to be removed and remediated by COLLINS prior to COLLINS re-leasing the building to any new tenants.

25. Defendant violated the leases by returning the Premises to COLLINS in such a condition.

26. As a direct and proximate result of the condition of the Premises as returned to COLLINS, COLLINS has suffered damages as more particularly detailed in paragraphs 17(b) through 17(d) inclusive.

27. COLLINS has also suffered damages as a result of Defendant's failure to pay the entire interest that accrued on the unpaid rent COLLINS decided to and did pay in December, 2004. COLLINS has been damaged by that failure in an amount not less than $1,921.83.

**B. EQUITABLE ESTOPPEL**

28. COLLINS realleges and incorporates the allegations set forth in paragraphs 1 through 21, and 23 through 27 as if fully set forth herein.

29. COLLINS followed all prescribed procedures required by the Defendant to decommission the Premises, including but not limited to meeting with Defendant on numerous occasions, securing, receiving and transmitting bids for remediation and renovation work at the Premises and requesting on several occasions to meet and confer with Defendant to discuss apportionment of responsibility for the work to be done to remedy the waste committed to the building during the occupancy of the Premises by the DEA.

30. Despite writing to COLLINS on July 29, 2002 (Appendix G; A000568-A000572) and asking COLLINS for a cost proposal to the GSA "to decommission the laboratory in National City before September 1, 2002," the GSA thereafter failed and refused to participate in discussions or meetings regarding decommissioning, other than attending one meeting in March 2003. From and after March 11, 2003, COLLINS wrote, called and otherwise communicated with GSA regarding the proposed scope of work for decommissioning and the process of decommissioning, and it submitted bids and proposals for carrying out the decommissioning work (including forwarding the actual lease documents to the Contracting Officer on May 12, 2003 because those were not

available in his files). Despite these ongoing and substantial efforts, GSA failed to respond, negotiate or otherwise communicate with COLLINS in any way regarding the very decommissioning the GSA had demanded be undertaken in July, 2002.

31. The Contracting Officer finally communicated with COLLINS on May 28, 2003, indicating that GSA would turn over the keys, review the various correspondence regarding participation in the decomissioning and respond to COLLINS "within the next few weeks" with an outline of the "Governments position on the decommissioning effort."

32. Defendant did not thereafter contact COLLINS regarding decomissioning of the Premises until after COLLINS filed its Claim with the Contracting Officer on November 4, 2003, almost six months later. Because Defendant failed and refused to contact COLLINS regarding decomissioning of the Premises and in order to mitigate its damages, COLLINS was required to undertake the entire decomissioning process on its own without input from Defendant.

33. Defendant is now equitably estopped from denying liability for holdover rent for the period it took COLLINS to reasonably perform all demolition, removal and remediation of waste at the Premises.

34. Defendant is now equitably estopped from denying that the amounts expended by COLLINS were reasonable and necessary to remedy the waste Defendant had committed on the Premises.

35. Defendant is now equitably estopped from denying liability for the charges incurred by COLLINS in removing and remediating the asbestos containing material in the Premises and removing and remediating the hazardous and controlled substances that were left throughout the Premises.

## C. ATTORNEYS FEES

36. COLLINS realleges and incorporates the allegations set forth in paragraphs 1 through 21, 23 through 27 and 29 through 35 as if fully set forth herein.

37. COLLINS is entitled to an award of its costs and attorneys fees incurred in securing any judgment in this action pursuant to the Equal Access to Justice Act, 5 U.S.C. §§504, et seq.

## V. PRAYER FOR RELIEF

**WHEREFORE,** COLLINS requests that the Court enter judgment in its favor and against the Defendant United States of America, in the following amounts:

1. $228,708.21 for holdover rent;
2. $104,501 for costs associated with removal of asbestos containing material;
3. $132,593.80 for costs associated with removal and remediation of hazardous and controlled substances found throughout the building;
4. Additional interest on the amount of the May, 2003 rent paid by the GSA as provided by law, in the amount of $1,921.83.
5. Interest as provided by law;
6. Attorneys fees pursuant to the Equal Access to Justice Act, 5 U.S.C. §§504, et seq.; and
7. Such further and other relief as the Court deems just and proper.

Respectfully submitted:
TIGHE PATTON ARMSTRONG TEASDALE, PLLCC

Date: May 19, 2005

By: [signature]

David Taylor, Esq. (D.C. Bar No. 91280)
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Ave., N.W., Suite 300
Washington, DC 20007
Telephone: (202) 454-2855
Fax: (202) 454-2805

Attorney of Record for Plaintiff

Of Counsel:

Richard S. Bayer (California Bar No. 144754)
James Swiderski (California Bar No. 185761)
Law Office of Richard S. Bayer
1150 Silverado, Suite 116
San Diego, California 92037
Telephone: (858) 454-1005
Facsimile: (858) 454-1021