IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COLLINS NATIONAL, a limited partnership, and COLLINS DEVELOPMENT CO., a California corporation as General Partner, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 05-563C (Judge Baskir) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 7.1(c) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following reply to plaintiffs' opposition to defendant's motion for partial summary judgment.[1]

I. The 1986 Lease Imposed The Burden of Abating Asbestos Upon Collins

We demonstrated in our motion that Collins, not the Government, possessed the duty to abate asbestos under the plain language of the lease. Specifically, we noted that both the 1975 and 1986 leases imposed the burden upon Collins, as landlord, to maintain the premises in good

[1] "Def. Mot." refers Defendant's Motion For Partial Summary Judgment. "Pl. Opp." refers to Plaintiffs' Opposition To Defendant's Motion For Partial Summary Judgment. "App." refers to the Joint Appendix.

repair and tenantable condition and to comply with all codes and ordinances applicable to ownership and operation of the building. Def. Mot. at 4, 17. Furthermore, we noted that, in the 1986 lease, Collins represented that there were no asbestos-containing materials ("ACMs") in the building, that Collins would remove or otherwise abate asbestos if there were any ACMs in the building, that Collins would take precautions to manage or control any ACMs, and that the Government possessed the right to inspect the premises for any ACMs and terminate the lease if there was any ACMs in the building. Def. Mot. at 18-19. These comprehensive lease provisions protected the Government's right to lease a building that was free from health hazards such as asbestos. The burden to abate any ACM, thus, was, at least since 1986, upon Collins as landlord and owner of the building.

Collins admits in its response, as it must, that Collins was aware that there were ACMs in the building prior to signing the 1986 lease. Pl. Opp. at 19. If Collins was aware of ACMs in the building, its certification that there was no ACM in the building constitutes a misrepresentation that triggered the Government's right to terminate the lease or require Collins to remove or abate and control the ACM. App. at 251. Since 1986, therefore,

the Government possessed the right to require Collins to remove or abate ACMs. Although the Government did not exercise its right to terminate the lease or require Collins to remove ACMs in the building, the Government requested that Collins abate asbestos on numerous occasions and Collins, in fact, abated asbestos at least three times during the lease period, i.e., in 1989, 1990 and 2001. Def. Mot. at 19.

Nonetheless, Collins in response attempts to refute its liability to abate asbestos under the 1986 lease. Pl. Opp. at 19. Collins contends that the Government waived the requirements of the "Asbestos" provision by accepting the space "as is." Pl. Opp. at 19. Collins erroneously relies upon paragraph two of "Special Space Requirements," which states that "[s]pecial space features and improvements within the Government's space are accepted in an 'as is' condition." App. at 241. That provision, however, applies only to special space requirements and improvements, such as the incinerator, and is not applicable to the main lease provisions.

Collins errs by failing to note the applicable "as is" provision in paragraph 13 of the lease. App. at 218. That paragraph states:

> Wherever the notation, "Acceptable As Is" appears in this lease, the same shall mean that the relevant structure, configuration, facility, system or equipment is accepted by the Government as it

> exists at the commencement of the term of this lease; however, such notation shall not be construed to relieve Lessor of any repair, maintenance, operation or other requirement of this lease.

In accordance with this paragraph, the Government accepted many parts or aspects of the building on an "as is" basis by marking "Acceptable As Is" on the right-hand column next to the relevant paragraph. App. at 226-228,230-233. The Government, however, did not mark "Acceptable As Is" next to the "Asbestos" paragraph. App. at 327. The Government, therefore, did not waive the "Asbestos" provision in the lease.

Collins' theory, moreover, makes no sense in light of the other provisions in the 1986 lease addressing asbestos. The "Asbestos" paragraph that Collins contends was waived is only one of several provisions addressing asbestos in the lease. There was another clause entitled "Termination –Erroneous Representation Concerning Asbestos and Polychlorinated Biphenyls" ("Termination Clause"), which gave the Government the right to terminate the lease or require Collins to remove or abate ACMs. App. at 251. Because the Termination Clause independently granted the Government the right to require Collins to remove or abate asbestos, it is irrelevant whether the "Asbestos" paragraph was waived or

not. In either event, Collins, not the Government, possessed the duty to abate asbestos under the lease.

Contrary to Collins' contention, there is no ambiguity in the lease provisions with respect to who possessed the duty to abate asbestos. Collins mistakenly contends that the asbestos provisions are ambiguous and, thus, should be construed against the Government because its representation that there was no ACM in the building was contrary to the facts known by the parties. Pl. Opp. at 20. The lease provisions including the supplemental lease agreements, interpreted as a whole, indicate that Collins bore the burden to abate asbestos. Any misrepresentation by Collins regarding the presence of ACMs in the building triggered the Government's right to terminate the lease or require Collins to remove or otherwise abate the asbestos. App. at 251. Collins' misrepresentation did not somehow nullify the provisions in the lease that guaranteed the Government's right to lease a safe, hazard-free building. The Court should reject this interpretation because it would leave "portions of the contract language useless, inexplicable, inoperative, meaningless, or superfluous," Blake Construction Co. v. United States, 987 F.2d 743, 746-47 (Fed. Cir. 1993), and furthermore, undermine the spirit and purpose of the the 1986

lease provisions that specifically address asbestos. Northrop Grumman Corp. v. United States, 136 F.3d 1479, 1483 (Fed. Cir. 1998) ("We must construe a contract so as 'to effectuate its spirit and purpose' and to give 'reasonable meaning to all of its parts.'")

II. The Government Does Not Possess A Duty To Abate The Vinyl Asbestos Tiles Under The Spearin Doctrine

In our motion, we further demonstrated that the Government does not possess a duty to remove or abate the vinyl asbestos tiles under the Spearin doctrine. Def. Mot. at 23-26. We explained that the Spearin doctrine was not applicable, because the Government did not provide detailed plans on how to construct the building. Instead, the Government issued a solicitation explaining the Government's space requirements and asked the offerors to provide detailed plans on how those requirements would be met. App. at 14. As we explained, Collins, in response to the solicitation, provided an amended proposal that included vinyl asbestos tiles, and the Government accepted Collins' amended proposal. Under these circumstances, it defies the rationale of Spearin to imply a warranty upon the Government.

In response, Collins contends that the facts in Poorvu v. United States, 190 Ct. Cl. 640, 420 F.2d 993 (1970), are directly analogous to this

case and that Poorvu should be controlling. Collins' contention is erroneous. In Poorvu, the Postal Service hired an architect who drew up the final plans that were included in the solicitation. 420 F.2d at 995. Although there were some negotiated changes to the plan, which reduced the cost of construction, the bidder in Poorvu was required to comply with the final plans drawn by the Postal Service architect, unless otherwise agreed to by the Postal Service. Id. at 996.

In contrast, there were no plans attached to the solicitation here. App. at 1-64. Instead, the solicitation provided "requirements and specifications . . . [that] represent minimums which must be met or exceeded." App. at 14. The solicitation stated that these specifications were "not all inclusive, but provide[d] a guideline for offerors as to quality and standards required by the Government." App. at 14 (emphasis added). The solicitation, in contrast to Poorvu, requested that the offeror provide copies of a floor plan. App. at 14.

This distinction is significant in determining whether an implied warranty should be implied pursuant to the Spearin doctrine. As the court in Poorvu explained, there are two ways that the Government can have a building built: "(1) To explain to potential bidders what type of facility it

wants and allow the low bidder to design, construct and warrant that building is fit for its intended purpose, or (2) choose to design the building itself and require the low bidder to construct it in accordance with the plans, and warrant that it will have been constructed in a workmanlike manner." 420 F.2d at 999. In this case, the Government chose the former, whereas in Poorvu, the Government chose the latter. Here, because Collins designed and constructed the building, Collins warranted that the building was fit for its purpose, not the Government.

Collins, nonetheless, contends that Spearin is applicable because the lease documents specify that vinyl asbestos tiles are to be used in certain areas of the laboratory. Pl. Opp. at 27. Although Collins admits that the parties agreed to modify the terms of the solicitation by substituting vinyl asbestos tiles in many parts of the building, Pl. Opp. at 1, Collins fails to note that it was the one who proposed amending the solicitation to use vinyl asbestos tiles, not the Government who proposed the use of vinyl asbestos tiles. App. at 74, 77. Because the Government merely agreed to Collins' amended proposal to use vinyl asbestos tiles, the facts here do not warrant implication of a warranty upon the Government.

We further demonstrated in our motion, that even if the Court implied a warranty here, Collins' asbestos claim with respect to the vinyl asbestos tiles must fail, because the vinyl asbestos tiles were not "defective" under the Spearin doctrine. Def. Mot. at 26. In response, Collins does not provide any evidence that the vinyl asbestos tiles could not be used for its intended purpose and needed to be removed because the flooring was somehow inadequate. Instead, Collins contends that the vinyl asbestos tiles were "defective" because they reduced the value of the building. Collins provides no support for its proposition that the tiles were defective even when they continued to provide adequate flooring, simply because the building was worth less than if, for example, the floors were covered with carpet or another type of tile. Nor does Collins provide any evidence regarding the amount, if any, the value of the building was reduced because of the vinyl asbestos tiles.

In sum, there is no basis pursuant to the Spearin doctrine for implying a duty upon the Government to remove or abate the vinyl asbestos tiles, especially when the facts suggest that Collins bore the burden of abating asbestos under the express terms of the lease and

Collins is the one who warranted that the building would be fit for its purpose.

III. <u>The Government Does Not Possess The Duty To Abate Asbestos Under Its Implied Duty Not To Commit Waste</u>

In our motion, we finally demonstrated that the Government does not possess a duty to abate asbestos under its implied duty not to commit waste. Def. Mot. at 20-22. As the Supreme Court stated in <u>United States v. Bostwick</u>, 94 U.S. 53 (1876), there is an "implied obligation on the part of the lessee to so use the property as not to unnecessarily injure it." 94 U.S. at 65-66. The Government's duty was limited to using the office space and drug laboratory with reasonable care as to prevent any unnecessary damage to the premises. By no stretch of the imagination can this duty be extended to removing asbestos that Collins, the builder and landlord, voluntarily chose to use to in meeting fireproofing and insulation requirements, regardless of whether asbestos insulation was standard in 1975 or not.

In response, Collins admits that the lessee's implied duty not to commit waste does not extend to ACMs per se. Pl. Opp. at 24. Instead, Collins contends for the first time that it was required to remove all ACMs because residue from the controlled substances contaminated ACMs and

the only way to remove this residue was to remove the ACMs altogether. Id. Collins relies upon the affidavit of Ronald Miller, the industrial hygienist who performed the pre-renovation and demolition survey for URS Corporation, in support of its contention. Id. Mr. Miller stated in his affidavit that the "least expensive and safest method of dealing with drug contaminated asbestos-containing material was to remove it with normal asbestos protective systems in place." Id.

To the extent that Collins is now alleging that it was required to remove ACMs because of the presence of drug residue on the ACMs, this relates to Collins' drug residue claim and our motion for partial summary judgment does not address Collins' drug residue claim. Def. Mot. at 11, fn. 3. To narrow the issues for trial, the Court should determine whether the Government possessed any duty to remove or abate asbestos per se, including the vinyl asbestos tiles. These issues are questions of law, which involve interpretation of the lease and any implied duties arising from the lease. There are no genuine issues of material fact that would prevent the Court from deciding who possessed the duty to abate asbestos. The issue of whether Collins was required to remove ACMs because of drug residue

on the ACMs can be reserved for trial and need not defeat the Government's motion for partial summary judgment.

Collins cites to Brown v. Green, 8 Cal. 4th 812, 884 P.2d 55 (1994), in support of its contention that the court should not determine liability for abating asbestos based upon the terms of the lease, but should look at all of the circumstances in the case. Brown v. Green, however, is not instructive here for several reasons. First, it is well-settled that contracts and leases to which the Government are a party "are normally governed by federal law, and not by the law of the state where they are made or performed." Prudential Insurance Co. v. United States, 801 F.2d 1295, 1298 (Fed. Cir. 1986); Corman v. United States, 26 Cl. Ct. 1011, 1016 (1992). Second, in that case, the lessee assumed a duty to repair and a duty to comply with all laws. In contrast, Collins, the lessor, retained the duty to repair and duty to comply with all laws and, more specifically in the 1986 lease, assumed the duty to abate or remove any ACMs in the premises. "Where, as here, the provisions of the [lease] are phrased in clear and unambiguous language, they must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret

them." Coast Federal Bank, FSB, v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003).

Finally, Collins contends in its response that the Government should be estopped from raising any of these defenses because the Government failed to timely participate in the decommissioning process. Pl. Opp. at 18, fn. 4. Collins, however, fails to cite any legal or factual support for this proposition. "Although the application of equitable estoppel against the government is not entirely foreclosed, the Supreme Court has qualified that 'the Government may not be estopped on the same terms as any other litigant.'" United Pacific Insurance Co. v. Roche, 401 F.3d 1362, 1366 (Fed. Cir. 2005) (quoting Heckler v. Community Health Services, 467 U.S. 51, 60 (1984)). The United States Court of Appeals for the Federal Circuit has held that "if equitable estoppel is available at all against the government some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel." United Pacific Insurance, 401 F.3d at 1366 (quoting Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000)). Although the Government may not have responded as promptly as Collins would have desired during the decommissioning process, Collins has failed to provide any evidence of

affirmative misconduct on the part of the contracting officer or any other Government employee. Accordingly, the Government is not estopped from raising any defenses against Collins' claims.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiff's claim for damages arising from the need to abate asbestos on the premises.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Bryant G. Snee

BRYANT G. SNEE
Assistant Director

s/ Nancy M. Kim

NANCY M. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-0546
Fax: (202) 514-8640

June 16, 2006 Attorneys for Defendant