GENERAL SERVICES [redacted]RATION
PUBLIC BUILDIN[redacted]CE

PAGE 1 OF PAGES1

DATE OF SURVEY
April 30, 2003

Check one: ☐ INITIAL ☐ FINAL

# CONDITION SURVEY REPORT

…AME AND ADDRESS
…boratory
…West 35th Street
…tional City, CA

LESSOR'S NAME AND ADDRESS
Collins Development Company
11750 Sorrento Valley Road, Suite 209
San Diego CA 92121

ROOM NUMBERS OR OTHER IDENTIFICATION

LEASE NUMBER
GS-09B-86764

SUGGESTED ITEMS *(Incomplete)*

1. BUILDING EXTERIOR
2. BUILDING ENTRANCES
3. CEILING
   a. MATERIAL
   b. PAINT
4. CORRIDORS
5. DOORS
   a. MATERIAL
   b. LOCKS
   c. TRANSOMS
6. ELECTRICAL SYSTEM
   a. LIGHT FIXTURES (NUMBER AND TYPE)
   b. SWITCHES
   c. OUTLETS
7. ELEVATORS (NUMBER AND TYPE)
8. FIRE ESCAPES
9. FIRE PROTECTION EQUIPMENT
   a. FIRE EXTINGUISHERS (TYPE)
   b. HOSE RACKS AND/OR REELS
   c. FIRE ALARM SYSTEM (TYPE)
   d. SPRINKLERS
   FLOORS
   a. MATERIAL
   b. COVERING
11. HEATING AND AIR CONDITIONING SYSTEMS
   a. HEATING PLANT
   b. RADIATORS
   c. SPACE HEATERS
   d. AIR DUCTS AND OUTLETS
   e. FANS
12. LAVATORIES (OFFICE)
13. REST ROOM FACILITIES
   a. LAVATORIES
   b. WATER CLOSETS
   c. URINALS
   d. MIRRORS
   e. WASTE RECEPTACLES
   f. TOWEL DISPENSERS
   g. TOILET PAPER DISPENSERS
   h. SANITARY PAD DISPENSERS
14. SKYLIGHTS
15. STAIRS

18. WINDOWS
   a. FRAME
   b. SASH
   c. VENETIAN BLINDS
   d. ROLLER SHADES
   e. SCREENS
   f. AWNINGS

NARRATIVE REPORT

REPORT ON ALL PERTINENT ITEMS, COMMENTING AS TO THEIR GENERAL CONDITION AND APPEARANCE, TYPE OF CONSTRUCTION, CONDITION OF PAINT OR OTHER FINISH, ETC. USE REVERSE OF THIS FORM IF MORE SPACE IS NEEDED.

The above referenced lease expires on April 30, 2003. The space is ready for return to the Lessor (*see comments below) with no damage, other than the normal wear & tear that would be expected from a long term tenancy in a laboratory.

*It is acknowledged that the removal of drug residue has not taken place as of the date of this exit walkthrough. Upon completion of an analysis of the Lessors "Decommissioning" package by the Public Health Service, the removal of residue will addressed at that time.

Photos depicting the facility at lease expiration are on file.

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL** # of pages ► 3

| | |
|---|---|
| To KATAYEH SHOJAEE | From DARRYL SMITH |
| Dept./Agency GSA | Phone # 619-557-5407 |
| Fax # 310-235-7406 | Fax # 619-557-2928 |

NSN 7540-01-317-7368 5099-101 GENERAL SERVICES ADMINISTRATION

We, the undersigned, do hereby certify that this report represents our opinion of the true and correct condition of the above described premises as of:
April 30, 2003

SIGNATURE AND TITLE
Contracting Officer
Darryl Smith
C.O.

SIGNATURE AND TITLE
Laboratory Director

SIGNATURE OF LESSOR *(If not obtained, explain on reverse)*

WASH DC 56-4199

GSA FORM 1204
AUGUST 1955

# CERTIFICATION OF AVAILABILITY OF BUDGET ACTIVY 53 FUNDS

| A. BUILDING INFORMATION | |
|---|---|
| Location Code | CA5293 |
| Street Address | 402 WEST 35th STREET |
| City, State | NATIONAL CITY, CA |

| B. CBR INFORMATION | PLEASE LIST ALL EXISTING CBRs | | | | |
|---|---|---|---|---|---|
| Agency Name | Bureau Code | CBR # | Existing RSF | New RSF | OA Number |
| DEA | 1532 | CA0002723 | 34,832 | N/A | N/A |
| " " | " " | CA0002724 | 34,832 | N/A | N/A |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| C. TYPE OF LEASE ACTION | Existing Lease # | New Lease # | IA Exp RSF | NOA Exp RSF | EST. TI PER RSF |
|---|---|---|---|---|---|
| 1 a. CHANGE IN SQFT-EXPANSION | | | | | |
| b.CHANGE IN SQFT-REDUCTION | | -------- | -------- | -------- | |
| 2. ESCALATION | | -------- | -------- | -------- | -------- |
| 3. EXTENSION | | -------- | | | |
| 4. NEW | -------- | | | | |
| 5. NEW/REPLACING | | | | | |
| 6. RENEWAL | | -------- | | | |
| 7. SUCCEEDING | | | | | |
| 8. SUPERSEDING | | | | | |
| 9. TERMINATION | LCA86764 | -------- | -------- | -------- | -------- |
| 10. STEP RENT (Increase/decrease) | | -------- | -------- | -------- | -------- |
| 11. OTHER | | -------- | -------- | -------- | |

| | |
|---|---|
| **PROJECT NUMBER** | 2CA0495 |
| AWARD DATE | 4-30-03 |
| EFFECTIVE DATE | 4-30-03 |
| NEW ANNUAL RENT | N/A |
| CURRENT ANNUAL RENT | 949,491.64 |
| **INCREASE/DECREASE IN A/R** | -0- |
| NEW RENTABLE SF | N/A |
| CURRENT RENTABALE SF | 34,832 |
| **INCREASE/DECREASE IN SF** | N/A |

Realty Assistant/Specialist [signature] 6-4-03

Signature Date

Certifying Official ~~05/03/02~~

Signature Date

| UDGET BRANCH | DATE | A/R | ASSOCIATED PROJECTS | EFF DATE | TYPE |
|---|---|---|---|---|---|
| GALAXY | | | | | |
| STAR | | | | | |
| NEAR | | | | | |



H.R9/KS/FORMS 02/22/2002

Law Office of
Richard S. Bayer

1150 Silverado Street, Suite 116
La Jolla, California 92037
(858) 454-1005 FAX (858) 454-1021
rbayer@richardbayer.com

www.richardbayer.com

**Hand Delivered**

November 4, 2003

Darryl S. Smith
General Services Administration
401 West "A" Street
Suite 2075
San Diego, California 92101-7908

Re: Lease No. GS-09B-86764
402 West 35th Street
National City, California

Dear Darryl:

Attached is the Claim of Collins National a Limited Partnership, regarding the above Lease and the costs incurred in decommissioning the above described premises. Please contact me if you have any questions or concerns. We look forward to discussing this matter with you in the very near future.

Very truly yours,

Richard S. Bayer

RSB:db

cc: William Tribolet
Berlinda Bubis

| | |
|---|---|
| In regards to:<br><br>Lease No. GS-09B-74817, as amended and as supplemented and amended by Lease No. GS-09B-86764, as amended<br><br>By and Between:<br><br>Collins National, a Limited Partnership Collins Development Co., a California corporation as General Partner,<br><br>Landlord<br><br>and<br><br>The United States of America, General Services Administration, Public Buildings Service,<br><br>Tenant and Contracting Officer | **CLAIM OF COLLINS NATIONAL AGAINST THE UNITED STATES OF AMERICA, GENERAL SERVICES ADMINISTRATION, PUBLIC BUILDINGS SERVICE** |

Pursuant to paragraph 23, 52-233-1 of that certain Lease No GS-09B-86764, Collins National, a Limited Partnership through Collins Development Co., a California corporation as General Partner ("COLLINS") makes the following claim against the United States of America, General Services Administration, Public Buildings Service (the "GSA"):

## I. Statement of Facts

1. COLLINS and GSA entered into Lease No. GS-09B-86764 on or about November 25, 1986 (the "Lease"). A copy of the Lease is attached as Exhibit 1.

2. The purpose of the Lease was to extend occupancy of a certain building located at 402 West 35th Street, National City, California (the "Premises") by the Drug Enforcement Agency, an Agency of the United States (the "DEA").

3. COLLINS had originally built the Premises to suit the occupancy of the DEA in 1974 and the DEA took occupancy of the Premises pursuant to the written original lease

agreement, Lease No. GS-09B-74817 dated June 13, 1975 (the "Original Lease"). A copy of the Original Lease is attached as Exhibit 2.

4. DEA continually occupied the Premises from 1975 through and including April 30, 2003 when the Lease term expired.

5. DEA remained in the Premises from and after April 30, 2003 until the keys were turned over to COLLINS on or about May 30, 2003. At that time, COLLINS accepted the keys from the DEA tenants but specifically reserved its rights against GSA and DEA with respect to holdover rent and costs incurred in decommissioning the building. The reservation of rights letter is attached as Exhibit 3.

6. In order to receive the award of the Original Lease, COLLINS was required to build the Premises to suit the occupancy and substantial special requirements of the DEA. As a condition to the Original Lease, COLLINS was required to install in the Premises the following:

a. Perimeter walls were to extend "slab to slab" and be soundproof, including double layer of sheetrock with the space between filled with residential type insulation (Schedule A to Original Lease, p. 000030);

b. All outside ground floor windows were to be covered with heavy gauge wire screen or bars (Schedule A to Original Lease, p. 000030);

c. All doors were to be solid core (Schedule A to Original Lease, p. 000030);

d. The undercover telephone room required a dedicated telephone outlet (Schedule A to Original Lease, p. 000032);

e. The Laboratory required special separation elements between the lab and the administrative area (Schedule A to Original Lease, p. 000033);

f. Laboratory floors were to be covered with acid/base resistant tile (Schedule A to Original Lease, p. 000033);

g. three fume control stations were to be constructed with individual exhaust ventilation duct systems of special construction (Schedule A to Original Lease, p. 000034);

h. A vault was to be constructed of steel reinforced concrete block (Schedule A to Original Lease, p. 000035);

i. A volatile solvent room was constructed with a 2-hour fire rating, panic bar lockset door and epoxy lining up to 12" around the interior walls (Schedule A to Original Lease, p. 000035);

j. Exhaust fans were installed in the Solvent Room as well for light and "heavy vapors" (Schedule A to Original Lease, p. 000035);

k. The outside wall of the Solvent Room required a blowout panel for explosions (Schedule A to Original Lease, p. 000035);

l. A water deionization system was required for the lab work (Schedule A to Original Lease, p. 000036); and

m. Floors in all offices and corridor areas were required to be covered in vinyl asbestos (Schedule B to Original Lease, Part II, paragraph 4(a), p. 000042).

7. COLLINS also received further construction details from the DEA regarding the requirements of the facility, including:

a. Exhaust fans for the Solvent Storage Room were required to meet "requirements of NFPA for Class 1, Division 1, Groups C & D Hazardous Locations" (DEA General Specifications, 1-Solvent Storage Room, p. 000070);

b. Flooring in the Gas Storage Room was required to be "vinyl asbestos tile" (DEA General Specifications, 2-Gas Storage Room, p. 000070);

c. Flooring in the Main Lab 1 and 2 was required to be "vinyl asbestos tile" (DEA General Specifications, 3-Main Lab 1 and 2, p. 000071);

d. Flooring in the Special Purpose Labs was required to be "vinyl asbestos tile" (DEA General Specifications, 4-Special Purpose Lab etc., p. 000071);

e. Flooring in the Men's and Women's Locker Rooms was required to be "vinyl asbestos tile" (DEA General Specifications, 8-Men's and Women's Locker Rooms, p. 000072);

f. Flooring in the Employees Lounge was required to be "vinyl asbestos tile" (DEA General Specifications, 11-Employee's Lounge, p. 000072);

g. Flooring in the Vault was required to be "vinyl asbestos tile" (DEA General Specifications, 12-Vault, p. 000072);

h. Flooring in the Administrative Storage Room was required to be "vinyl asbestos tile" (DEA General Specifications, 12-Administrative Storage Room, p. 000073);

i. Flooring in the File Room was required to be "vinyl asbestos tile" (DEA General Specifications, 17-File Room, p. 000073);

j. Flooring in the Fingerprint Room was required to be "vinyl asbestos tile" (DEA General Specifications, 18-Fingerprint Room, p. 000073); and

k. Flooring in the Chemical Storage and Glassware Storage areas was required to be "vinyl asbestos tile" (DEA General Specifications, 21-Chemical Storage etc, p. 000074).

8. The inclusion of vinyl asbestos tile flooring in many of these areas was designed to make the building both fireproof and apparently more affordable. (See Letter of E. Tyler Miller, Jr. to Lawrence N. Hill, December 13, 1974, attached as Exhibit 4, reducing the annual rent by $4,300 by including vinyl asbestos tile and base).

9. During its occupancy of the Premises under the Original Lease, the DEA had occasion to require additional laboratory equipment (Supplemental Lease Agreement No. 2, attached as Exhibit 5; Supplemental Lease Agreement No. 4, attached as Exhibit 6; and Supplemental Lease Agreement No. 6, attached as Exhibit 7), ventilation and exhaust fans in the Vault (Supplemental Lease Agreement No. 7, attached as Exhibit 8), additional electrical service (Supplemental Lease Agreement No. 8, attached as Exhibit 9) and a significant remodel of the Premises (Supplemental Lease Agreement No. 11, attached as Exhibit 10).

10. In addition to the above, the DEA often discussed and eventually required installation of a gas incinerator for high temperature destruction of contraband and illegal substances. COLLINS constructed the improvements required by Supplemental Lease Agreement No. 12 (attached as Exhibit 11) but the DEA never received Air Pollution Control District approval to use the Incinerator and, other than for testing purposes, it was never used. Significant to the Lease expectations of the parties, however, the Supplemental Lease Agreement No. 12 provided:

> REPLACEMENT: At its sole discretion the Government may elect to replace any part and/or the complete incinerator required by this Addendum. However, any such replacement would be at the sole expense of the Government. Any replacement shall be and remain the property of the Government and may be removed or otherwise dispose [sic] of by the Government. *The Lessor hereby waives any restoration in conjunction with said removal.*

(emphasis added).

11. Instead of renewing the Original Lease, in 1986 the GSA decided for reasons of policy and changes in the law that a new lease would be required. After negotiations and extensions of the Original Lease, the Lease was entered into effective November 1986 and the DEA occupancy continued unabated.

12. During the almost thirty (30) years of occupancy of the Premises by DEA, numerous controlled substances were examined and stored on the Premises. During said occupancy, controlled and otherwise hazardous substances became embedded throughout the Premises, including but not limited to the carpet, plumbing systems, pipes, drywall, ceiling tiles and controlled and otherwise hazardous substances infiltrated the heating, ventilating and air-conditioning systems of the Premises.

13. As Lease termination approached in the spring of 2003, the DEA, GSA and COLLINS cooperated in reviewing the Premises for decommissioning so that the responsibility for returning the Premises to COLLINS in the appropriate condition could be apportioned between the parties to the Lease.

14. COLLINS makes this Claim for additional payments based on four classes of activity:

a) Category 1: Holdover Rent for Continued Occupancy – DEA continued to occupy the premises through and including May 30, 2003 until the keys were returned to Collins. **SUB-TOTAL THIS CLAIM: $78,865**;

b) Category 2: Holdover Rent for the Period of Decommissioning – COLLINS was unable to advertise for rent or rent the Premises because it was required to complete the decommissioning process by demolishing and removing various controlled and hazardous substances in the Premises resulting from the DEA's occupation of the Premises. Rent is calculated at $2,628.83 per day from and including May 31, 2003 through and including August 26, 2003. **SUB-TOTAL THIS CLAIM: $228,708.21**;

c) Category 3: Costs of Removing Asbestos from the Building – COLLINS was required to remove asbestos-containing vinyl tile and mastic originally required by the GSA to be included within the Building. This claim includes two parts: (a) COLLINS incurred costs in connection with environmental assessments and monitoring required during the

asbestos abatement stage which work was performed by URS and for which COLLINS paid a total of $27,6700 (Exhibit 19) plus required asbestos abatement which work was performed by Clauss Construction for which COLLINS paid a total of $76,901.00 (Exhibit 20). **SUB-TOTAL THIS CLAIM: $ 104,501**; and

d) Category 4: Costs of Demolishing Those Portions of the Structure Contaminated with Controlled and Hazardous Substances—Collins was required to demolish and remove much of the structure due to the presence throughout the Premises of controlled and hazardous substances imbedded in the fixtures due to the DEA's use and occupancy of the building. This claim includes two parts: (a) COLLINS incurred costs in in connection with environmental assessments and monitoring required during the demolition phase which work was performed by URS and for which COLLINS paid a total of $11,080 (Exhibit 21) plus required demolition work of the areas imbedded with controlled and hazardous substances which work was performed by Clauss Construction for which COLLINS paid a total of $121,513.80 (Exhibit 20). **SUB-TOTAL THIS CLAIM: $132,593.80.**

## II. Support for Claims

### A. Category One: Holdover Rent from April 30, 2003 through and including May 30, 2003

The undisputed facts are that the DEA did not deliver the keys to the premises back to COLLINS until May 30, 2003. Delivery of the keys is recognized as one indication of relinquishment of physical possession. *Cafritz Company v. General Services Administration*, GSBCA 13525 (August 3, 1998). Consequently, the Government owes COLLINS no less than the then current rent of $2,628.83 per day for thirty days for a total of $78,864.90 .

**B. Category Two: Holdover Rent for the Period of Decommissioning: May 31, 2003 through and including August 26, 2003**

As the termination date of the Lease approached (April 30, 2003), COLLINS contacted GSA to discuss how the decommissioning process should work. COLLINS secured a thorough environmental inspection, audit and assessment of the condition of the Premises and shared all of the information with GSA. The various reports obtained indicated that asbestos required by the GSA in the Original Lease needed to be removed. These reports also indicated that the only way to remove embedded controlled substances was to demolish and remove building components on the Premises.

During the first week of March, 2003, representatives of COLLINS and the GSA met regarding the decommissioning. At that time, representatives of GSA assured COLLINS that GSA would review the issued reports and the estimates for remediation and discuss with COLLINS the GSA's position on participation in the decommissioning process. GSA also presented a scope of work from EnviroSolve, a company hired independently by GSA to propose a scope of work for decommissioning. (See EnviroSolve "Facility De-Commissioning, Drug Enforcement Agency Laboratory (CA 5293ZZ), attached as Exhibit 12). Subsequent to the March 2003 meeting, however, the GSA never responded to COLLINS' various requests for information regarding how the GSA/DEA would cooperate and participate in the decommissioning of the premises nor did GSA/DEA respond to efforts to secure an agreement to the scope of work delivered by COLLINS to the representatives of the GSA. (Letters of Richard S. Bayer dated March 14, 2003; April 11, 2003; April 30, 2003; and May 15, 2003; Exhibits 13, 14, 15, and 16 respectively; also see letter of Richard S. Bayer, dated May 30, 2003, attached as Exhibit 3).

In order to mitigate its damages, COLLINS was required to undertake all of the decommissioning work without the benefit of discussions with the GSA on how to properly

apportion the costs of such work. As a consequence, COLLINS entered into a contract with URS, a nationally recognized environmental consultant, to supervise decommissioning work at the Premises and complete remediation of the Premises. (A copy of that Contract is attached as Exhibit 17).

URS, and the subcontractors working under it, commenced work at the Premises on or about June 23, 2003, and completed work on August 26, 2003. Because much of the work included removal of controlled substances and hazardous materials, COLLINS was unable to market the Premises for leasing until the decommissioning work was finalized.

Holdover rent calculated at the rate of the base rent for the premises would be calculated at 90 days times $2,628.83 per day for a total of $228,708.21.

**C. Category Three: Costs of Removing Asbestos from the Building**

As pointed out above, the original Solicitation for Offers, incorporated into the Original Lease, required that vinyl asbestos tile and base were to be used as floor covering in many areas of the premises. When the Lease was signed, it was recognized that this asbestos-containing material was still in the building and COLLINS agreed to the "precautions for the control of asbestos" as provided by the Government. Supplemental Lease Agreement No. 1 (Exhibit 18).

The requirement for asbestos tile in the Original Lease, and its recognition in the Lease, was an alteration mandated by the Government and for the abatement and removal of which the Government bears responsibility.

In the first *Cafritz* case (GSBCA 13525, April 29, 1997), the Contracting Officer denied the claim of the Cafritz Company to compensation for asbestos abatement on lease termination, finding that "[t]here is no reason to believe the Government's occupancy of the space had any influence on the building's construction materials." Here, however, the

decision to mandate asbestos was the Government's decision. As a consequence, the cost of abating that material at the end of the Lease lies with the Government.

In fact, Envirosolve (a frequent GSA contractor in decommissioning matters) pointed out that "the purpose of this scope of work is to evaluate and determine what cleanup, if any, is necessary to remove any hazardous materials contamination caused by the government occupancy." [1] (Exhibit 12, second paragraph) Thus, abatement of the asbestos containing material is the responsibility of the Government. COLLINS seeks $104,501 for removal of the asbestos.

**D. Category Four: Costs of Demolishing Those Portions of the Structure Contaminated with Controlled and Hazardous Substances**

The final category of damages sought by COLLINS covers the amount expended to demolish those portions of the Premises that were contaminated by the ubiquitous presence of controlled substances (including pheynlcyclhexyl piperidine (PCP) lysergic acid diethylamide (LSD), cocaine, heroine, methamphetamine and tetrahydrocannabinol) as well as hazardous substances and contaminants (including mercury, metals, asbestos, organic radiological and other residue). Although neither the Lease nor the Original Lease contained a restoration clause, "the absence of a clause in the lease obligating the Government to restore the premises to the original condition does not conclusively dispose of this matter." *HG Properties, L.P. v. General Services Administration,* GSBCA 15219 (March 30, 2001). In *KMS Development Co. v. General Services Administration,* GSBCA (June 20, 1996), the Board of Contract Appeals also dealt with a GSA lease without a restoration clause, finding:

---

[1] The Scope of work prepared by Envirosolve claims that asbestos containing floor tile and mastic were "present prior to the time of occupancy and are not the responsibility of the Government. . .." However, as noted above, asbestos-containing tile and mastic were mandated by the Solicitation for Offers and are thus "caused by the government's occupancy."

> Although the lease permits GSA to make alterations to the premises and does not contain a clause requiring GSA to restore the premises to the condition that existed when the lease term began, every lease contains an implied obligation on the part of the tenant not to damage the property. *Eaddy v. United States,* 139 F.Supp. 49 (Ct.Cl. 1956).

Consequently, a landlord "may in proper circumstances pursue an action for damages arising from the commission of voluntary waste" by the Government. *HG Properties, L.P. v. General Services Administration, supra*.

Moreover, at the times both the Original Lease and the Lease were entered into, the GSA maintained a handbook entitled *Acquisition of Leasehold Interests in Real Property*. Chapter 10 of that handbook defines "waste" as "any material change in the premises other than ordinary wear and tear which permanently injures the lessor's and/or the owner's interest." *HG Properties, L.P. v. General Services Administration, supra.*.

The current procedure for lease termination as outlined in the Program Administration Guide for the utilization and disposal of excess and surplus real and related personal property under the provisions of the Federal Property and Administrative Services (40 U.S.C. 471, et seq.) (Act), the Surplus Property Act of 1944, as amended (1944 Act), and the provisions of other applicable statutes, provides in paragraph 17 of Chapter 1 as follows:

> **17. Termination of leases**. An inspection of the property must be made jointly with a representative of the lessee or user upon notice of the termination of any lease or other use agreement to determine the extent, if any, of restoration required under the provisions of the lease or agreement.
>
> a. In all appropriate cases a condition survey of the premises and equipment must be made jointly with a representative of the grantee, at the inception and termination of any lease, permit, or license. A report of such survey must be prepared and signed by the participating parties.
>
> b. Notices of any restoration must be forwarded promptly to the lessee or user. If restoration is required, the property shall again be inspected before it is vacated or relinquished, to ensure compliance with such requirements. If in the best interest of the Government, a cash restoration settlement may be negotiated with the lessees or user in lieu of physical performance.

COLLINS repeatedly requested the assistance and cooperation of the GSA with respect to inspecting the Premises, developing a joint plan for decommissioning, participating in the negotiation of the contracts for decommissioning, supervising the process and agreeing upon completion and complete decommissioning. Although GSA had secured independent advice as to its responsibility for participating in the decommissioning process (see Exhibit 12), it chose not to participate. Consequently, COLLINS had no input on the scope, extent or costs of decommissioning prior to undertaking the work. Nonetheless, to mitigate its damages it pursued and completed all of the work and is now marketing its property again.

In addition, the Lease agreement is certainly ambiguous as to GSA's restoration requirements. The lease was drafted by the GSA and as such, "requires sufficient clarity at the points of performance that reasonable persons would know the contract requirements, and would bid in accordance with these obligations." *Beta Const. Co., Inc. v. U.S.* 185 F.3d 884, 1999 WL 77981, at page 1 (9th Cir. 1999).[2] For instance, in Supplemental Lease Agreement No. 12 to the Original Lease relating to the installation of the incinerator, the Government reserved the right to replace any part of the incinerator at its sole expense. The replacement clause provides "The Lessor hereby waives any restoration in conjunction with said removal." A long line of federal cases involving GSA leases requires that the reviewing court "interpret the contract as a whole to give reasonable meaning to all its parts and to avoid 'conflict or surplusage of its provisions.' *Granite Constr. Co. v. United States,* 962 F.2d 998, 1003 (Fed.Cir.1992)." *A.S. McGaughan Co., Inc. v. Barram* 113 F.3d 1256, 1997 WL 199464, **2 (C.A.Fed.,1997) ; see also, *Hol-Gar Manufacturing Corp. v. United*

---

[2] Unpublished opinion; F.3d cite is to the listed table of decisions without a published opinion.

*States*, 253 F.2d 927 (Ct.Cl. 1965); *Adelaide Blomfield Management Co. v. General Services Administration*, GSBCA 12851, 95-1 BCA 27,514 at 137,114. If the addition of the waiver of restoration language has any meaning, it must mean that GSA had an implied obligation to restore the premises to reasonable use after termination of its lease.

Both the implied restoration obligation and the implied covenant not to commit waste require that the GSA pay for the decommissioning costs incurred by COLLINS that related specifically to the contamination of the Premises from the presence of controlled and hazardous substances introduced into the Premises by the DEA. COLLINS has carefully segregated the costs incurred between those necessary to remove the contamination and the contaminated systems, and those charges incurred which benefited the re-marketing of the building. COLLINS has paid for the latter costs.

The total costs for decommissioning assigned by COLLINS to the GSA are $237,094.80. The reasonableness of these charges is borne out by the bid delivered to COLLINS by Enviro-Solve, the Government's chosen expert, regarding "chemical removal, selective demolition and asbestos abatement of the DEA Laboratory located in National City, California" dated May 12, 2003 (See Exhibit 16). The total bid from Enviro-solve was $276,011.00.

In addition, COLLINS seeks $307,573.21 for holdover rent.

Finally, COLLINS seeks interest on past due amounts as allowed by the Lease and by law and attorneys fees as allowed by the Lease and by law.

**CERTIFICATION**

Pursuant to paragraph 23, subpart 52.233-1(d), the undersigned hereby certifies that:

1. This claim is made in good faith;

2. The data attached hereto and incorporated herein, which data supports this claim, are accurate and complete to the best of the undersigned's knowledge and belief;

3. The amount requested accurately reflects the current amount outstanding and a good faith estimate of charges to be incurred for which the undersigned believes that the GSA and the Government are liable.

DATED: 10/31/03

Collins National, a Limited Partnership comprising Collins Development Co., a California corporation as General Partner

By:

Collins Development Company, General Partner

By: ______________________